Ramon Rossi Lopez, Bar No.
Christina Anne Fountain, Bar No. 111220
Troy A. Brenes, Bar No. 249776
**LOPEZ McHUGH LLP**
100 Bayview Circle,
Suite 5600, North Tower
Newport Beach, CA 92660
Telephone: (949) 737-1501
Facsimile: (949) 737-1504
cfountain@lopezmchugh.com
tbrenes@lopezmchugh.com

FILED
2008 MAR 24 PM 4:31
CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
SANTA ANA
BY:

Attorneys for Plaintiff
XAVIER CASTRO

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA – EASTERN DIVISION**

XAVIER CASTRO, an individual,

*Plaintiff*,

vs.

DAVOL, INC., a corporation, BARD DEVICES, INC., a corporation, and C.R. BARD, Inc., a corporation, and DOES 1 through 10, inclusive,

*Defendants*.

Case No. CV08-01966 VBF (OPx)

**COMPLAINT FOR DAMAGES:**

1. **NEGLIGENCE**
2. **STRICT PRODUCTS LIABILITY-FAILURE TO WARN**
3. **STRICT PRODUCTS LIABILITY – DESIGN DEFECT**
4. **STRICT PRODUCTS LIABILITY – MANUFACTURING DEFECT**
5. **BREACH OF EXPRESS WARRANTY**
6. **BREACH OF IMPLIED WARRANTY**
7. **DECEIT BY CONCEALMENT**
8. **DECEIT BY INTENTIONAL MISREPRESENTATION**

**9. FRAUD AND DECEIT**
**10. NEGLIGENT MISREPRESENTATION**
**11. VIOLATION OF *BUSINESS AND PROFESSIONS CODE* §§ 17200, ET SEQ.**
**12. VIOLATION *OF BUSINESS AND PROFESSIONS CODE* §§17500**
**13. VIOLATION OF *CIVIL CODE* §§ 1750 ET SEQ.**
**DEMAND FOR JURY TRIAL**

Plaintiff XAVIER CASTRO makes the following allegations against Defendants DAVOL, INC, BARD DEVICES, INC., and C.R. BARD, INC and DOES 1 through 10, inclusive.

**NATURE OF THE CASE**

1. Plaintiff XAVIER CASTRO suffered serious and potentially life threatening injuries resulting from his implantation with a defective and unreasonably dangerous product known as the Bard® Composix® Kugel® Mesh Hernia Patch, manufactured by Defendants DAVOL, INC, BARD DEVICES, INC., and C.R. BARD, INC and DOES 1 through 10, inclusive ("Defendants"). Plaintiff seeks relief for his injuries under multiple causes of action for Defendants' responsibilities in the development, testing, design, manufacture, inspection, marketing, labeling, promotion, and distribution of the Kugel Hernia Patch that caused Plaintiff's injuries.

## PARTIES

**Plaintiffs**

2. Plaintiff XAVIER CASTRO is, and at all times relevant was, a citizen and resident of the city of Moreno Valley, county of Riverside, State of California. Plaintiff brings this action against Defendants for the personal injuries he suffered as a result of being implanted with the Kugel Patch. Plaintiff believes and alleges that the Patch is and was developed, tested, designed, manufactured, inspected, marketed, labeled, promoted, distributed, and sold by Defendants identified in this Complaint.

**Defendants**

3. Upon information and belief, Defendant DAVOL, INC. (hereinafter "DAVOL") is, and at all times relevant to this action was a wholly owned subsidiary of BARD DEVICES, INC, which is a wholly owned subsidiary of C.R. BARD, INC. At all times relevant, Davol is and was a corporation duly organized and existing under the laws of the state of Delaware, with its principal place of business at 100 Sockanosset Crossroads, P.O. Box 8500, Cranston, Rhode Island, 02920. DAVOL, at all times relevant to this action, through its officers, directors, agents, servants, employees, and representatives, developed, tested, designed, manufactured, inspected, marketed, labeled, promoted, distributed, and sold to distributors, physicians, hospitals, and medical practitioners, the Kugel® Patch to be surgically implanted in patients throughout the United States, including the state of California.

4. Defendant BARD DEVICES, INC. is, and at all times relevant was, a wholly owned subsidiary of C.R. BARD, INC., and is the corporate parent/stockholder of DAVOL. BARD DEVICES is a corporation duly organized and existing under the laws of the state of Delaware. BARD DEVICES, through the officers, directors, agents, servants, employees, and representatives of its subsidiary, DAVOL, at all times relevant to this action, developed, tested, designed, manufactured, inspected, marketed, labeled, promoted, distributed, and sold to distributors, physicians, hospitals, and medical

practitioners, the Kugel® Patch to be surgically implanted in patients throughout the United States, including the state of California.

5. C.R. BARD, INC. is the corporate parent/stockholder of DAVOL and BARD DEVICES. C.R. BARD is a corporation duly organized and existing under the laws of the state of Delaware. C.R. BARD, through its subsidiary officers, directors, agents, servants, employees, and representatives, at all times relevant, developed, tested, designed, manufactured, inspected, marketed, labeled, promoted, distributed, and sold to distributors, physicians, hospitals, and medical practitioners, the Kugel® Patch to be surgically implanted in patients throughout the United States, including the state of California.

6. The true names and capacities, whether individual, corporate, associate or otherwise, of other certain developers, testers , designers, manufactures, inspectors, labelers, promoters, distributors, and sellers and/or their alter egos are sued herein as DOES 1 through 10, inclusive, in that the identity of said defendants are presently unknown to Plaintiffs who therefore sue these Defendants by said fictitious names. Plaintiffs will seek leave of Court to amend this Complaint to show the true names and capacities of said DOE defendants when their identities have been ascertained.

7. Plaintiff is informed and believes, and thereupon alleges, that Defendants DOES 1 through 10 were authorized to and did, conduct business in the County of Riverside and/or the State of California. Plaintiffs are further informed and believe, and thereupon allege, that Defendants DOES 1 through 10 were and/or are, in some way or manner, responsible for and liable to Plaintiffs for the events, happenings, and damages alleged in this Complaint.

8. Plaintiff is informed and believes, and thereupon alleges, that at all times relevant to this action, each of the Defendants was the agent, servant, employee, subsidiary, affiliate, partner, assignee, successor-in-interest, predecessor in-interest, alter ego, joint venturer, and/or other representative of each of the remaining Defendants and

was acting in such capacity in undertaking the acts, conduct, and omissions alleged in this Complaint.

9. Plaintiff alleges that the corporate form of Defendants, including Does 1 through 10, was a sham and should be disregarded because there exists and, at all times herein mentioned, there existed a unity of interest in ownership between and among these Defendants such that any individuality and separateness between theses Defendants has ceased and/or never existed; in that these Defendants, and each of them are the alter-egos of one another and exerted direction and control over each other. Adherence to the fiction of a separate and independent existence of Defendants, as separate entities distinct from one another will permit an abuse of the corporate privilege, sanction a fraud upon Plaintiff and other recipients of the Kugel® Patch, and promote injustice. Defendants, and each of them, encouraged, directed, condoned and ratified the negligent, willful, intentional, and wrongful acts, omissions, and conduct of each and all Defendants.

10. The following facts regarding the operations of the corporate Defendants support disregard of the corporate fiction: (1) corporate formalities for all of the wholly-owned subsidiaries were ignored and were not observed; (2) property was not kept separate and apart between the parent corporations and the wholly-owned subsidiaries; (3) direct deposits were made into bank accounts of subsidiaries which were controlled by the parent corporation and consolidated into the parent's deposit accounts; (4) the parent corporation at all times maintained 100% financial interest in all subsidiaries and maintained control over the subsidiaries on an operational basis both by appointing the chief operation officer of each subsidiary and by top down management; (5) the subsidiaries are used or established for the business purposes of the parent, and are the means by which the parent corporation conducted its business; and (6) the subsidiary facilities were not reasonably capitalized in light of the nature and risk of their business.

11. Additionally, Plaintiff alleges that at all relevant times, the corporate Defendants have operated as a single business enterprise to achieve a common business purpose. Parent corporations and any wholly-owned subsidiaries were not operated as

separate and individual entities, but rather integrated and commingled their resources to achieve a common business purpose and conducted their operations as follows: (1) a single and common board of directors and the same members existed between the parent and subsidiaries; (2) the same centralized and consolidated accounting and financial reporting was used by both the parent and the subsidiaries for both internal purposes and external purposes such as for the Internal Revenue Services and annual financial reports; (3) parent corporations paid the wages of all employees, agents, and representatives of the subsidiary corporation; (4) common business names are and were used by the parent and subsidiaries and the parent corporations' capital and credit lines are and were used to fund and operate the subsidiaries.

12. All of the subsidiaries of Defendant parent corporations were established simply as shells, instrumentalities, and conduits through which the parent conducted its business, and therefore, the corporate fiction must be disregarded to prevent fraud or injustice. Each constituent corporation may be held liable for the obligations incurred by the other component entities since these Defendants operated as a single business enterprise to achieve a common business purpose.

13. The Defendant parent corporations have intentionally operated all subsidiaries in a manner that left the subsidiaries without assets sufficient to satisfy the claims of the plaintiff and other claimants by taking complete control and possession of the subsidiaries' revenues and receivables. All monies received as proceeds in the sales of products by the subsidiary corporations were maintained and received by the defendant parent corporations to fund their own operations and were not maintained at the subsidiary level.

14. At all times herein mentioned the Defendants, and each of them, were engaged in the business of or were successors in interest to, entities engaged in the business of developing, testing, designing, manufacturing, fabricating, inspecting, marketing, labeling, promoting, packaging, distributing and selling the Kugel Patch, which was implanted into Plaintiff.

## JURISDICTION AND VENUE

15. This Court has jurisdiction over all causes of action alleged in this Complaint pursuant to 28 U.S.C. 1332 (diversity of citizenship). The matter in controversy in this civil action exceeds the sum of $75,000, exclusive of interest and costs and is between citizens of different states.

16. Venue is proper in this Court, pursuant to 28 U.S.C. 1391. A defendant is deemed to reside in any judicial district where its contacts would be sufficient to subject it to personal jurisdiction at the time the action is commenced. Defendants transact business and have purposefully availed themselves of the benefits and protections of the State of California. Defendants have developed, tested, designed, manufactured, inspected, marketed, labeled, promoted, distributed, and sold to distributors, physicians, and hospitals, Kugel Hernia Patches, that were to be surgically implanted in patients in this District and as such, have had sufficient contacts to subject them to personal jurisdiction at the time this action is commenced.

## ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

17. This action involves the Kugel Patch developed, tested, designed, manufactured, inspected, marketed, labeled, promoted, distributed and sold by Defendants between 2001 and March 2006.

18. The Kugel Patch is a prosthetic device used primarily to repair ventral and inguinal hernias. The Patch is composed of two sides. One side is constructed of a double layer of *monofilament polypropylene* (mesh). This double layer creates a positioning pocket, in which a *polymer "memory recoil ring"* is placed. On the other side is a barrier of expanded polytetrafluoroethylene (ePTFE). During the hernia repair surgery, the Kugel Patch is inserted behind the hernia defect through a small incision. The memory recoil ring allows the Kugel Patch to swing open and maintain its shape during placement.

19. In October 2000, Defendants, C.R. BARD and BARD DEVICES through their DAVOL subsidiary submitted a 510(k) notification of intent to market the Kugel Patch. The Federal Drug Administration (hereinafter the "FDA") approved the Kugel Patch for marketing as a Class II medical device in January 2001.

20. Immediately after the Kugel Patch was placed on the market, Defendants became aware and obtained knowledge that said product was defective and causing serious injury to those persons in whom it had been implanted. Defendants knowingly, willfully, and intentionally concealed and/or misrepresented their knowledge of the defective and unreasonably dangerous condition of the Kugel Patch from Plaintiff, the healthcare industry, and other consumers.

21. Defendants were required to conduct post market surveys as part of the device validation process. On or about January 2006, the FDA inspected a Kugel Patch manufacturing facility belonging to Defendants. This inspection resulted in the FDA issuing an Establishment Inspection Report ("EIR") in 2006. The 2006 EIR found that the post market survey validation process of the device was incomplete and failed to include all data from physicians surveyed during this time, including those which demonstrated unfavorable or "dissatisfied" results. These complaints and concerns of physician surveyors were actively concealed by Defendants from Plaintiff, the healthcare community, and other consumers.

22. On December 17, 2002, Plaintiff underwent a ventral incisional hernia repair procedure at Valley Presbyterian Hospital in Van Nuys California, during which a defective and unreasonably dangerous Oval Kugel Patch was implanted into his abdomen.

23. The Kugel Patch implanted into Plaintiff was developed, tested, designed, manufactured, inspected, marketed, labeled, promoted, distributed and sold by Defendants into the stream of commerce to be used by surgeons for hernia repair surgeries, and was further represented by Defendants to be an appropriate, safe, cost effective, and suitable product for such purposes.

24. No later than September 2004, Defendants became aware and obtained knowledge of serious problems with the weld process involving the memory recoil ring. Despite attempts to correct the problem at the manufacturing plant, Defendants found the corrective measures to be ineffective and the process still not in control. Defendants were aware that these weld issues had existed from the time the Kugel Patch was placed on the market and all current sizes and lots suffered from this dangerous defect. This information was intentionally withheld at this time from Plaintiff, the healthcare community, the FDA, and other consumers.

25. According to the 2006 EIR, DAVOL corporate executives informed the FDA that the spring and summer period of 2005 showed a marked increase in the number of adverse event complaints regarding the Kugel Patch and the memory recoil ring. In fact, FDA records indicate that as of August 2005, Defendants had received at least the following adverse event reports: 17 instances of ring breaks, at least one of which resulted in death; two unexplained bowel perforations; four ring breaks during implant procedures; five cases of device deformity; and eight instances of bowel adhesions to the Patch. Notwithstanding their knowledge of increasing complaints and complications associated with the Kugel® Patch, Defendants failed to cease distribution or notify Plaintiff, his healthcare providers, or other consumers of the severity of complications associated with the unreasonably dangerous and defective Kugel Patch until late December 2005.

26. Even then, Defendants limited the December 2005 distribution hold and recall to "Extra Large" sized Kugel® Patches, despite being aware of substantial numbers of similar serious adverse events associated with nonrecalled Kugel® Patch sizes; and that all Kugel Patch sizes were developed, tested, designed, manufactured, inspected, marketed, labeled, promoted and intended for use in a similar fashion, and therefore, subject to the same health risks and defects as the recalled Kugel Patch sizes. Defendants, further, admittedly violated federal law by not timely notifying the FDA of the December 2005 recall.

27. The FDA classified the December 2005 recall as a Class 1 recall. Class 1 recalls are the most serious type of recalls and involve situations in which the FDA believes there is a reasonable probability that use of the product will cause serious injury or death.

28. The basis for the recall is that the memory recoil ring that opens the Kugel Patch can break under stress or pressure, including the stress of implantation. The Kugel Patch is also known to become deformed and migrate within the body. These defects are known to cause severe injuries including, *inter alia*, perforation of the bowel, ring migration through the abdominal wall, abnormal chronic enteric fistulae, infection, abscesses, bowel obstruction, intense abdominal pain, peritonitis, sepsis, and adhesions between the bowel and the Patch. The following conditions are symptomatic of the injuries herein mentioned: fever, unexplained or persistent abdominal tenderness, vomiting, abnormal bowel movements, tenderness at implant site, abdominal distention, or other unusual symptoms.

29. As previously mentioned, the FDA conducted investigations of a Cranston, Rhode Island, Kugel Patch manufacturing facility owned, managed, and operated by Defendants. The subsequently issued 2006 EIR, determined, among other things, that Defendants:

a. had excluded memory recoil ring failure events from their complication database, reports, and recall notices, which should have been included;

b. misidentified numerous Kugel Patch complication events;

c. failed to apply product quality hold and release procedures on a timely basis;

d. failed to properly follow procedures for conducting design validation review;

e. failed to identify all actions necessary to correct and prevent recurrence of further

ring break and Kugel Patch complications; specifically, Defendant failed to provide justification for including only Extra Large Kugel Patch sizes in the December 2005 recall;

f. failed to provide all reasonably known information regarding numerous Kugel Patch complaints, specifically noting that company officials had "understated" in several reports to the FDA the potential severity of device-related injuries, including three reports involving injuries and one report involving a possible device-related death;

g. failed to perform strength testing on memory recoil rings for all sizes of Kugel Patches before putting them into the stream of commerce;

h. failed to maintain appropriate sources for quality data to identify, track, and trend existing and potential causes for memory recoil ring failures and Kugel Patch complaints resulting in numerous inconsistencies and errors in the raw data, actual complaints, and electronic databases.

30. On March 24, 2006, Defendants DAVOL, BARD DEVICES, C.R. BARD, and DOES 1 through 150, inclusive, and each of them, expanded the recall to include the following Kugel Patche sizes: 1) "Oval" Patches, 2) "Large Circle" Patches, and 3) "Large Oval" Patches.

31. On January 10, 2007, Defendants DAVOL, BARD DEVICES, C.R. BARD, and DOES 1 through 150, inclusive, each of them, expanded the recall for the second time, to include further production lots of the defective and unreasonably dangerous Kugel Patch.

32. The FDA inspected the Cranston, Rhode Island, Kugel Patch manufacturing facility owned, managed, and operated by Defendants, DAVOL, BARD DEVICES, C.R. BARD, and DOES 1 through 150, inclusive, and each of them, for the second time, from January 23 through March 13, 2007. On April 24, 2007, the FDA issued a "Warning

Letter" to Defendants, notifying them that the inspection had **<u>again</u>** uncovered "serious violations of the law" in regards to the quality assurance program used in manufacture of Kugel Patch. These violations were of such a degree and nature that the FDA determined the Kugel Patch to be "adulterated" under section 501(h) of the Federal Food, Drug and Cosmetic Act. The warning letter specifically mentions, *inter alia*, the following violations:

a. Failure to establish and maintain adequate corrective and preventative action procedures which ensure identification of actions needed to correct and prevent the recurrence of nonconforming product and other quality problems;

b. Failure to establish adequate management controls to ensure that an effective quality system has been established and maintained;

c. Failure to document the implementation of corrective and preventative actions;

d. Failure to validate your device's design to ensure that the device conforms to defined user needs and intended uses;

e. Failure of your firm to establish procedures to completely address the identification, documentation, evaluation, segregation, disposition and investigation of non-conforming product.

The Letter notes that as an example of the fifth enumerated violation, Defendants'

"quality system failures" resulted in the delayed recall of the defective Kugel Patches.

33. The Kugel Patch implanted into Plaintiff was included in the recall issued by Defendants. Neither Plaintiff nor his healthcare providers were aware of the defective and unreasonably dangerous condition of the Kugel Patch prior to his implantation with one.

34. Sometime after the 2002 hernia repair surgery, Plaintiff began experiencing severe and debilitating abdominal pain, nausea, fever, hypotension and sepsis symptoms. His condition worsened progressively, and on April 4, 2005 he was hospitalized and underwent surgery. Physicians performed an emergency exploratory laparotomy and found that, *inter alia*, the Kugel Patch had perforated and become entwined with Plaintiff's bowel, caused sepsis and peritonitis, and caused the formation of an abnormal enteric fistula. Surgeons cut the mesh out from Plaintiff's bowel piece by piece and repaired the fistula. Plaintiff's bowel was also noted to be acutely and chronically inflamed.

35. Plaintiff suffered from infection, necrotic flesh, purulent drainage, and very large recurrent hernia for several months following this surgery. Plaintiff had his recurrent hernia defect repaired November 18, 2005.

36. Plaintiff is informed and believes, and thereupon alleges, that his injuries were a proximate result of his being implanted with the defective and unreasonably dangerous Kugel Patch developed, tested, designed, manufactured, inspected, marketed, labeled, promoted, distributed and sold by Defendants. Plaintiff's physical injuries were of the same nature and extent as the serious adverse events Defendants knew to be associated with the Kugel Patch.

37. Plaintiff's medical condition was and has been continuously monitored by his physicians and other healthcare providers to observe and screen for exacerbation of his injured bowels and other health risks associated with Plaintiff's implantation with a Kugel Patch.

38. Plaintiff will require continuous monitoring of his Kugel Patch related injuries for the remainder of his life. His physical injuries, proximately caused by his

implantation with a Kugel Patch, are severe, life threatening, and permanent, and have adversely impacted the quality of his life and the life of his family.

39. Plaintiff has unnecessarily, but for the implantation of the defective Kugel Patch and/or the negligent medical care he received, suffered serious and life threatening physical injuries, severe emotional and mental injuries in coping with his physical injuries, and has incurred and expended significant amounts for the medical care, hospitalizations, and medications, required to treat and care for his Kugel® Patch related injuries and will continue to do so long into the future.

41. Plaintiff is informed and believes, and thereupon alleges that Defendants failed to comply with FDA 510(k) application and reporting requirements.

42. Plaintiff is informed and believes, and thereupon alleges that Defendants knew, or in the exercise of reasonable care should have known, prior to the recalls of the Kugel Patch and prior to its implantation into Plaintiff, that the aforesaid products were of such a nature that they were not properly developed, tested, designed, manufactured, inspected, marketed, labeled, promoted, distributed and sold, were not suitable for the purpose they were intended, and were unreasonably likely to injure users of the products.

43. Plaintiffs are informed and believe, and thereupon allege that Defendants did not timely apprise Plaintiff, the healthcare industry, or other consumers of the defective and unreasonably dangerous condition of the Kugel Patch, despite Defendants' knowledge of said condition.

44. Plaintiff is informed and believes, and thereupon alleges that Defendants were aware that the non-recalled Kugel Patch sizes were uniformly subject to the same complications, risks of failure, and defects as the recalled Kugel® Patch sizes.

45. Plaintiff is informed and believes, and thereupon alleges that he did not, and should not reasonably have become aware of facts making him suspicious that his injury was caused by wrongdoing until sometime October 2007 when he became aware of the recall, which prompted him to order and review his medical records.

46. Defendants' conduct, as described in the preceding paragraphs, amounts to conduct purposefully committed, which Defendants must have realized was dangerous, heedless and reckless, without regard to the consequences or the rights and safety Plaintiffs.

**FRUADULENT CONCEALMENT**

47. Any applicable statutes of limitation have been tolled by the knowing and active concealment and denial of material facts known by Defendants when they had a duty to disclose those facts. They have kept Plaintiff ignorant of vital information essential to the pursuit of his claims, without any fault or lack of diligence on Plaintiff's part, for the purpose of obtaining delay on plaintiff's part in filing on his causes of action. Defendants' fraudulent concealment did result in such delay.

48. Plaintiff is informed and believes, and thereupon alleges that Defendants acted fraudulently, *inter alia*, by failing to disclose the unreasonably dangerous nature of the Kugel Patch to Plaintiff's healthcare providers, by failing to properly report adverse events associated with the Kugel Patch, and by urging Plaintiff's healthcare providers to not pass on warnings regarding the Kugel Patch to Plaintiff.

49. Plaintiffs could not reasonably have discovered the claims made herein until shortly before filing this complaint.

50. The Defendants are and were under a continuing duty to disclose the true character, quality and nature of the Patch that was implanted in Plaintiff, but instead they concealed them. As a result, Defendants are estopped from relying on any statute of limitations defenses.

/ / /

/ / /

**FIRST CAUSE OF ACTION**

**NEGLIGENCE**

**(Against All Defendants)**

51. Plaintiff re-alleges and incorporates by reference each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

52. Defendants had a duty to exercise reasonable and prudent care in the development, testing, design, manufacture, inspection, marketing, labeling, promotion, distribution and sale, including the duty to take all reasonable steps necessary to manufacture and sell a product that was not defective and unreasonably dangerous to consumers and users of the product.

53. Defendants were negligent in that they developed, tested, designed, inspected, marketed, labeled, promoted, distributed and sold a defective product known as the Kugel Patch, knew and were aware of the defects inherent in the product, failed to act in a reasonably prudent manner in marketing the product, and failed to provide adequate warnings of the product's defects.

54 Defendants breached their duty of reasonable care and failed to exercise ordinary care in the development, testing, design, manufacture, inspection, marketing, labeling, promotion, distribution and sale of the Kugel Patch into interstate commerce, in that Defendants knew and had reason to know that implantation of the Kugel Patch into a consumer created a significant risk of his or her suffering unreasonably dangerous health related side effects, including, but not limited to: perforation of the bowel, ring migration through the abdominal wall, abnormal chronic intestinal fistulae, abscesses, bowel obstruction, intense abdominal pain, peritonitis, sepsis, adhesions between the bowels and the Patch, and other severe personal injuries and diseases, which are permanent in nature, including, but not limited to, death, physical pain and mental anguish, scarring and

disfigurement, diminished enjoyment of life, continued medical care and treatment due to chronic injuries/illness proximately caused by the Kugel Patch, the continued risk of requiring additional medical and surgical procedures including general anesthesia, with attendant risk of life threatening complications.

55. Defendants acted negligently, *inter alia*, in the following acts and omissions:

a. Developing, testing, designing, manufacturing, inspecting, marketing, labeling promoting, distributing and selling the Kugel Patch without thorough and adequate pre and post-market testing of the product;

b. Developing, testing, designing, manufacturing, inspecting, marketing, labeling promoting, distributing and selling, the Kugel Patch while negligently and intentionally concealing and failing to disclose evidence regarding use of the Kugel Patch, which demonstrated the risk of serious harm associated with the use of said product;

c. Failure to undertake sufficient tests to determine whether or not Kugel Patch was safe for its intended use,

d. Failure to disclose and warn regulatory agencies, the medical community, and consumers that Defendants knew and had reason to know that Kugel Patch was indeed unreasonably unsafe and unfit for use by reason of product's defect and risk of harm as discussed herein;

e. Failing to warn plaintiff, the healthcare community, and consumers that the product's risk of harm was unreasonable and that there were

safer and effective alternative hernia repair treatments available to plaintiff and other consumers.

f. Failing to provide adequate instructions, guidelines, and safety precautions to those persons to whom it was reasonably foreseeable would prescribe, use, and implant the Kugel Patch;

g. Advertising, marketing and recommending the use of the Kugel Patch, while concealing and failing to disclose or warn of the dangers known by Defendants to be connected with and inherent in the use of the Kugel Patch;

h. Representing that the Kugel Patch was safe for its intended use when in fact, Defendants knew and should have known the product was not safe for its intended purpose;

i. Failing to disclose to and inform the medical community and consumers that other forms of safer and effective treatments were available for use to treat the conditions for which Kugel Patch was manufactured;

j. Continuing manufacture and sale of the Kugel Patch with the knowledge that said product was dangerous and not reasonably safe, and failing to comply with FDA regulations and policy;

k. Failing to use reasonable and prudent care in the design, research,

manufacture, and development of the Kugel Patch so as to avoid the risk of serious harm associated with the use of the Kugel Patch as a hernia repair device.

l. Advertising, marketing, promoting and selling the Kugel Patch for uses other than as approved and indicated in the product's label;

m. Failing to design and manufacture the Kugel Patch so as to ensure the device was at least as safe and effective as other hernia repair devices on the market;

n. Failing to ensure the product was accompanied by proper and accurate warnings about possible adverse side effects associated with the use of the Kugel Patch and that the Kugel Patch had a known high risk of suffering a memory recoil ring break and the associated injuries described in this Complaint, which could be life-threatening and permanent;

o. Failing to conduct adequate testing, including post-marketing surveillance to determine the safety of the Kugel Patch; and

p. Failing to establish an adequate quality assurance program used in manufacture of the Kugel Patch.

56. Defendants knew and should have known that it was foreseeable that consumers such as plaintiff would suffer injuries as a result of Defendants' failure to

exercise ordinary care in the development, testing, design manufacture, inspection, marketing, labeling, promotion, distribution and sale of the Kugel Patch.

57. As a direct, proximate, and legal result of Defendants' acts, omissions, negligence, carelessness, and other wrongdoing and actions, Plaintiff has sustained serious, harmful, permanent, physical injuries, which have, and will continue in the future to, cause severe physical pain and suffering, and emotional distress. Plaintiff's quality of life has been severely and detrimentally affected, and in the future Plaintiff will be required to expend substantial sums of money for medical, hospital, and related care, all to plaintiff's financial detriment.

58. As a direct, proximate, and legal result of Defendants' negligence, carelessness, and other wrongdoing and actions, Plaintiff has been injured in his health, strength, and vitality, and has suffered injuries to his body and mind. All of his injuries proximately resulting from the dangerous and defective Kugel Patch, have caused and continue to cause Plaintiff intense, pain, suffering, anxiety, distress, fear, and anguish in addition to his bodily injury and damages.

59. As a direct, proximate, and legal result of Defendants' negligence, carelessness, and other wrongdoing and actions, Plaintiff has suffered loss of earning and loss of his future earnings capacity. The precise amount of these monetary losses is presently unknown to Plaintiff and will be determined according to proof at the time of trial.

60. As a direct, proximate, and legal result of Defendants' negligence, carelessness, and other wrongdoing and actions, Plaintiff must undergo ongoing and necessary health care, and will continue to incur expenses for medical treatment and incidental services necessary to his everyday life. In the future, Plaintiff will be required to obtain medical and/or hospital care, attention, and services in an amount currently unascertained but will be determined by proof at trial.

///

## SECOND CAUSE OF ACTION

## STRICT PRODUCTS LIABILITY - FAILURE TO WARN

**(Against All Defendants)**

61. Plaintiff re-alleges and incorporates by reference each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

62. Defendants developed, tested, designed, manufactured, inspected, marketed, labeled, promoted, distributed and sold the Kugel Patch into the stream of commerce and in the course of same, directly advertised and marketed the Kugel Patch to consumers or persons responsible for consumers, and therefore had a duty to warn of the risk of harm associated with the use of the Kugel Patch.

63. At the time the Kugel Patch was developed, tested, designed, manufactured, inspected, marketed, labeled, promoted, distributed and sold into the stream of commerce, and more specifically at the time Plaintiff was implanted with a Kugel Patch, Kugel Patches were defective and unreasonably dangerous when put to their intended and reasonably anticipated use, namely for hernia repair surgery. Defendants failed to adequately warn of the Kugel Patch's known or reasonably scientifically knowable dangerous propensities, and further failed to adequately provide instructions on the safe and proper use of the Product.

64. Prior to the manufacture, inspection, marketing, labeling, promotion, distribution and sale into the stream of commerce, and any recall of the Kugel Patch, Defendants knew or should have known of the risk of substantial and potentially life threatening danger associated with the intended and reasonably foreseeable use of the Kugel Patch. This known and knowable danger consisted of, a high rate of malfunction of the Kugel Patch, leading to, *inter alia*, bowel perforation, chronic intestinal fistula, severe abdominal pain, fever, sepsis, infection, dense internal scarring, recurrent hernia, and surgical repair procedures. Yet Defendants negligently, knowingly, willfully, intentionally, and wrongfully failed to provide adequate warnings to Plaintiff, the

healthcare community, or other consumers, of this known and reasonably scientifically knowable danger.

65. Defendants failed to provide any warning, labels, or instructions regarding the dangerous propensities of the Kugel Patch mentioned herein that were known or reasonably knowable at the time of distribution. Defendants also failed to provide timely updated warnings, labels, or instructions regarding the dangerous propensities of the Kugel Patch as they became known or knowable after distribution. In violation of their duty to warn of adverse side effects, these Defendants continue to fail to provide any warnings regarding the non-recalled variety of Kugel Patches and continue to fail to provide true and accurate warnings regarding the health risks associated with the recalled Kugel Patches.

66. Defendants failed to timely and reasonably warn of material facts regarding the safety and efficacy of the Kugel Patch; no medical care provider would have used — and no consumer would have accepted implantation with — the Kugel Patch, had those facts been made known to the prescribing healthcare providers and/or the consumers of the Kugel Patch.

67. The Kugel Patch warnings, labels, and instructions provided by Defendants at all time relevant to this action, are and were inaccurate, intentionally misleading, and misinformed and misrepresented the risks and benefits and lack of safety and efficacy associated with the Kugel Patch.

68. Defendants failed to perform, establish or otherwise facilitate adequate testing and/or quality assurance programs; either of which would have shown that the Kugel Patch posed serious and potential life threatening adverse effects and complications.

69. The health risks associated with the Kugel Patch as described herein are of such a nature that ordinary consumers would not have readily recognized the potential harm.

70. The Kugel Patch, which was designed, manufactured, fabricated, marketed, sold and distributed the into the stream of commerce by Defendants was defective at the time of release into the stream of commerce due to inadequate warnings, labeling and/or instructions accompanying the product.

71. On December 17, 2002, when Plaintiff was implanted with the Kugel Patch, Defendants failed to provide any warnings, instructions, or labels regarding the severity and extent of health risks posed by the Kugel Patch, as discussed herein.

72. Plaintiff did not know of the risk of substantial danger associated with the intended and foreseeable use of the Kugel Patch as described herein until the October 2007.

73. Plaintiff used the Kugel Patch in a normal, customary, intended, and foreseeable manner, namely for a hernia repair surgery.

74. The defective and dangerous condition of the Kugel Patch, including the one implanted into Plaintiff, existed at the time they were developed, tested, designed, manufactured, inspected, marketed, labeled, promoted, distributed and sold by Defendants to distributors and/or healthcare professionals or organizations. At the time Plaintiff had his hernia repair surgery in which the Kugel Patch was implanted, the Kugel Patch was in the same condition as when it was developed, tested, designed, manufactured, inspected, marketed, labeled, promoted, distributed and sold by Defendants.

75. As a direct, proximate and legal result of foregoing defects in the Product and Defendants failure to warn of said defects, Plaintiff suffered and will continue to suffer, the injuries and damages set forth in this Complaint.

/ / /

/ / /

## THIRD CAUSE OF ACTION

## STRICT PRODUCTS LIABILITY –DESIGN DEFECT

**(Against All Defendants)**

76. Plaintiff re-alleges and incorporates by reference each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

77. At all times relevant to this action, Defendants developed, tested, designed, manufactured, inspected, labeled, promoted, distributed and sold into the stream of commerce the Kugel Patch that and implanted into Plaintiff.

78. The Kugel Patch was expected to, and did, reach its intended consumers, handlers without substantial change in the condition in which the product was developed, tested, designed, manufactured, inspected, labeled, promoted, distributed and sold into the stream of commerce by Defendants.

79. At all times relevant to this action, the Kugel Patch was developed, tested, designed, manufactured, inspected, labeled, promoted, distributed and sold into the stream of commerce in a defective and unreasonably dangerous condition, for use by Plaintiff and all other consumers.

80. The Kugel Patch, as developed, tested, designed, manufactured, inspected, labeled, promoted, distributed and sold into the stream of commerce by Defendants was inherently defective, in that its foreseeable risks of harm exceeded its claimed benefits.

81. The Kugel Patch, as developed, tested, designed, manufactured, inspected, labeled, promoted, distributed and sold into the stream of commerce by Defendants was defective in design and formulation, because when it left the hands of said Defendants, the product was unreasonably dangerous and was also more dangerous than expected by the ordinary consumer.

82. At all times relevant to this action, Defendants knew and had reason to know that the Kugel Patch was inherently defective and unreasonably dangerous as developed, tested, designed, manufactured, inspected, labeled, promoted, distributed and sold into

the stream of commerce by them and when used by Plaintiff, the healthcare community, and other consumers in the intended and reasonably foreseeable manner.

83. Plaintiff used the product for the purpose intended by Defendants and in a manner normally intended to be used, namely for hernia repair surgery. Defendants had a duty to design, create, manufacture, and fabricate a product that was not unreasonably dangerous for its normal, common, intended use.

84. Defendants developed, tested, designed, manufactured, inspected, labeled, promoted, distributed and sold into the stream of commerce a defective product that created an unreasonable risk of serious harm to the health, safety, and well being of Plaintiff and other consumers. Defendants are therefore strictly liable for the injuries and damages sustained by Plaintiff proximately caused by his use of the Kugel Patch.

85. Neither Plaintiff, nor his healthcare providers could have, by the exercise of reasonable care, discovered the Kugel Patch's defective condition or perceived its unreasonable dangers prior to his implantation with the product.

86. The Kugel Patch, as developed, tested, designed, manufactured, inspected, labeled, promoted, distributed and sold into the stream of commerce by Defendants was defective due to the Kugel Patch's inadequate warnings and instructions. Defendants knew, and should have known, and adequately warned that the Kugel Patch created a risk of serious and dangerous side effects, including, but not limited to, perforation of the intestines, ring migration through the abdominal wall, abnormal chronic intestinal fistulae, abscesses, bowel obstruction, intense abdominal pain, peritonitis, sepsis, adhesions between the bowel and the Patch, and other serious and severe personal injuries, including death, some of which are permanent in nature.

87. Notwithstanding their knowledge of the inherently defective and unreasonably dangerous condition of the Kugel Patch, Defendants failed to adequately warn Plaintiff, his healthcare providers, or other consumers of the dangers and risks of harm associated with the use of the Kugel Patch.

88. Defendants were aware at the time the Kugel Patch was developed, manufactured, fabricated, tested, labeled, inspected, advertised, promoted, marketed, sold, and distributed into the stream of commerce that implantation of the Kugel Patch would result in an unreasonably high risk of Kugel Patch malfunction and risk of injury as discussed herein, which resulted in the product lacking in safety and efficacy when compared to other comparable and less dangerous surgically implanted hernia repair devices on the market.

89. The Kugel Patch developed, tested, designed, manufactured, inspected, labeled, promoted, distributed and sold into the stream of commerce by Defendants was defective due to inadequate post-marketing surveillance and warnings. Defendants knew and should have known of the existence of risks of serious side effects associated with use of the product, including, but not limited to, Kugel Patch failure leading to perforation of the bowel, ring migration through the abdominal wall, abnormal chronic intestinal fistulae, abscesses, bowel obstruction, intense abdominal pain, peritonitis, sepsis, adhesions between the bowel and the Patch, and other serious and severe personal injuries, including death.

90. Defendants continue to fail to adequately warn of the risks of harm associated with use of the Kugel® Patch and instead continue to advertise, market, label, and promote it to the public and the medical community as safe and effective for treatment of the medical conditions described herein.

91. By reason of the foregoing, Defendants are strictly liable in tort to plaintiff.

92. As a proximate result of foregoing defects in the Kugel Patch and Defendants' failure to warn of these defects, Plaintiff suffered and will continue to suffer, the injuries and damages set forth in this Complaint.

///

///

## FOURTH CAUSE OF ACTION

## STRICT PRODUCTS LIABILITY – MANUFACTURING DEFECT

### (Against All Defendants)

93. Plaintiff re-alleges and incorporates by reference each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

94. The Kugel Patch contained a manufacturing defect when it left the possession of Defendants. The Patch differs from said Defendants' intended result and/or from other ostensibly identical units of the same product line.

95. Plaintiff used the product in a way that was reasonably foreseeable to Defendants.

96. Plaintiff suffered and will continue to suffer, the injuries and damages set forth in this Complaint as a proximate result of manufacturing defect in the Kugel Patch.

## FIFTH CAUSE OF ACTION

## BREACH OF EXPRESS WARRANTY

### (Against All Defendants)

97. Plaintiff re-alleges and incorporates by reference each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

98. Defendants through their officers, directors, agents, representatives, and written literature and packaging, and written and media advertisement, expressly warranted that the Kugel Patch was safe and fit for use by consumers, was of merchantable quality, did not produce dangerous side effects, and was adequately tested and fit for its intended use.

99. At the time of making such express warranties, Defendants knew and should have known that the Kugel Patch did not conform to the express warranties and

representations and that, in fact, the Kugel Patch is not safe and poses serious health risks, of which Defendants did not accurately warn.

100. As a foreseeable, direct, and proximate result of the breach of the express warranties, Plaintiff suffered and will continue to suffer severe and permanent personal injuries, harm, and economic loss.

101. Plaintiff, the healthcare community, and other American consumers relied on the express warranties made by Defendants regarding the safety and efficacy of the Kugel Patch and were reasonable in doing so.

102. Defendants breached their express warranties because the Kugel Patch was and continues to be defective and not reasonably safe for its intended purpose.

103. Defendants expressly represented and warranted to the medical community and consumers, including Plaintiff and his healthcare providers that the Kugel Patch was safe and fit for the purposes intended, that it was of merchantable quality, that it did not pose dangerous health risks in excess of those risks associated with use of other similar hernia repair devices, that the side effects it did produce were accurately reflected in the warnings, and that it was adequately tested and fit for its intended use.

104. Defendants knew and should have known that the representations and express warranties were false, misleading, and untrue in that said Defendants knew the Kugel Patch was not safe and fit for its intended use, and that the Kugel Patch caused its users serious injuries that were not adequately warned of, identified, or represented by these Defendants.

105. Plaintiff suffered the injuries and damages described in this complaint as a direct, proximate and legal result of Defendants breaching their express warranties.

## SIXTH CAUSE OF ACTION
## BREACH OF IMPLIED WARRANTY

**(Against All Defendants)**

106. Plaintiff re-alleges and incorporates by reference each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

107. At all times relevant to this action, Defendants and their predecessors and their successors, developed, tested, designed, manufactured, inspected, marketed, labeled, promoted, distributed and sold into the stream of commerce the Kugel Patch, for use as a surgically implanted hernia repair device and for uses other than as approved and indicated in the product's instructions, warnings, and labels.

108. Defendants knew of the intended use of the Kugel Patch, at the time they developed, tested, designed, manufactured, inspected, marketed, labeled, promoted, distributed and sold the product for use by plaintiff, and impliedly warranted the product to be of merchantable quality, and safe and fit for its intended use.

109. Defendants impliedly represented and warranted to Plaintiff, his healthcare providers, the healthcare community, and other consumers that the Kugel Patch was safe and of merchantable quality and fit for the ordinary purpose for which the product was intended and marketed to be used.

110. The representations and implied warranties made by Defendants were false, misleading, and inaccurate because the Kugel Patch was defective, unsafe, unreasonably dangerous, and not of merchantable quality, when used as it was marketed and intended to be used.

111. Plaintiff, the healthcare community, and other consumers reasonably relied on the superior skill and judgment of Defendants as the developers, testers, designers, manufactures, inspectors, marketing, labeling, promoters, distributors, and sellers of the Kugel Patch, as to whether the Kugel Patch was of merchantable quality and safe and fit for its intended use, and also relied on the implied warranty of merchantability and fitness for the particular use and purpose for which the Kugel Patch was manufactured and sold.

112. Defendants placed the Kugel Patch into the stream of commerce in a defective, unsafe, and unreasonably dangerous condition, and the product was expected to and did reach Plaintiff without substantial change in the condition in which the Kugel Patch was manufactured and sold.

113. Defendants breached their implied warranty because their Kugel® Patch was not fit for its intended use and purpose.

114. Plaintiff was caused to suffer the injuries and damages described in this complaint as a proximate result of Defendants breaching their implied warranties.

## SEVENTH CAUSE OF ACTION

## DECEIT BY CONCEALMENT – *CAL. CIV. CODE* §§ 1709 -1710

**(Against All Defendants)**

115. Plaintiff re-alleges and incorporates by reference each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

116. Plaintiff brings this cause of action pursuant to *Civil Code* §§ 1709 – 1710 *et seq.* which states:

> One who willfully deceives another with intent to induce him to alter his position to his injury or risk, is liable for any damage which he thereby suffers. A deceit, within the meaning of § 1709 is either: 1. The suggestion, as a fact, of that which is not true, by one who has does not believe it to be true; 2. The assertion, as a fact, of that which is not true, by one who has no reasonable ground for believing it to be true; 3. The suppression of a fact, by one who is bound to disclose it, or who gives information of other facts which are likely to mislead for want of communication of that fact; or, 4. A promise, made without any intention of performing it.

117. Defendants from the time the Kugel Patch was first developed, tested, manufactured, inspected, marketing, labeled, promoted, distributed and sold and up to the present, willfully deceived Plaintiff by concealing from him, the healthcare community, and other consumers the true facts concerning the Kugel Patch, which said Defendants, as developers, testers, manufacturer, inspectors, marketers, labelers, promoters, distributors and sellers, had a duty to disclose. As set forth above, Defendants, in advance of

Plaintiff's use of the Kugel Patch, were aware of the dangerous and defective condition of the Kugel Patch and intentionally withheld this information from Plaintiff, the healthcare community, and other consumers even though these significant dangers were not readily obvious to the ordinary user of the products.

118. Defendants intentionally and fraudulently concealed the following material information:

a. Defendants knew and should have known that the Kugel Patch line of products, at all times relevant, were subject to high degree of risk of memory recoil ring failure resulting in, *inter alia*, bowel perforation, chronic intestinal fistula, severe abdominal pain, fever, sepsis, infection, dense internal scarring, and abdominal disfiguration.

b. Limited testing and adverse event reports revealed the Kugel Patch had an unreasonably high risk of adverse complications given its intended use(s) and higher risk of adverse complications, in addition to, and above and beyond those associated with other similar surgically implanted hernia repair devices.

c. Implantation of the Kugel Patch would not result in a safe and more effective method of hernia repair treatment than other available treatments;

d. Risk of adverse events with the Kugel Patch was not adequately tested prior to marketing of the product, nor sufficiently monitored post-market introduction.

e. Defendants' quality assurance program used in the manufacture of the Kugel Patch violated federal law.

f. Failed to disclose testing as early as early as September 2004 that revealed serious problems with the weld process involving the memory recoil ring.

g. Defendants intentionally and knowingly failed to disclose and

intentionally concealed numerous complaints of memory recoil ring failure and other device malfunctions.

h. The Kugel Patch was defective, and caused dangerous and adverse side effects, including, but not limited to the specific injuries specifically described elsewhere in this Complaint.

i. Patients using the Patch would likely suffer bowel injury and recurrent hernia and would require monitoring of these conditions while treating with the Kugel Patch;

j. That complications and failures associated with the Kugel Patch are not limited to the sizes which Defendants have recalled;

k. The Kugel Patch was negligently and defectively manufactured.

l. The Kugel Patch was negligently and defectively designed.

m. Defendants were under a duty to disclose to plaintiff and his physicians, the defective design and manufacture of the Kugel® Patch, which design and manufacture heightened the risk of suffering the injuries specifically described in this Complaint and suffered by Plaintiff.

119. Defendants fraudulently concealed the above-mentioned information with willful, wanton, and reckless disregard and depraved indifference for the safety and well being of the users of the Kugel Patch, such as Plaintiff.

120. Defendants intentionally concealed and suppressed the true facts concerning the Kugel Patch, although said Defendants were bound to disclose the true facts, with the intent to defraud and mislead Plaintiff, in that these Defendants knew that Plaintiff's healthcare providers would not have implanted the Kugel Patch and Plaintiff would not have accepted its use, if they were aware of the true facts concerning the dangers of the Kugel patch.

121. At all times relevant to this action and herein mentioned, Defendants conducted a sales and marketing campaign to promote the sale of the Kugel Patch and

willfully deceived Plaintiff, the healthcare community, and other consumers as to the health risks and harmful consequences associated with the use of the Kugel Patch. Defendants knew and were aware of the foregoing, and that the Kugel Patch was not safe, fit, and effective for its intended use, that the use of it is hazardous to human health, and that it has a serious propensity to cause serious injuries to users, including but not limited to the injuries suffered by Plaintiff as described in this Complaint.

122. In reliance upon the false and fraudulent misrepresentations and omissions of Defendants Plaintiff was induced to, and did use the Kugel Patch, thereby sustaining severe and permanent personal injuries and damages. Defendants knew and had reason to know that Plaintiff, the healthcare community, and other consumers did not have the ability to determine the true facts intentionally concealed by Defendants in prescribing and implanting the Kugel Patch, and would not have, respectively, prescribed and implanted same, if the true facts regarding the Patch had not been concealed by these Defendants.

123. Defendants had sole access to material facts concerning the defective nature of the product and its propensity to cause serious and dangerous side effects in the form of dangerous injuries and damages to persons who are implanted with the Patch.

124. At the time Defendants failed to disclose the foregoing facts, and at the time Plaintiff used the Kugel Patch, he and the healthcare community were unaware of Defendants' failure to disclose the above mentioned facts.

125. Plaintiff reasonably relied upon misrepresentations made by Defendants where knowledge of the concealed facts was critical to understanding the true dangers inherent in the use of the Kugel Patch.

126. Defendants' conduct was wrongful and constitutes fraud and deceit, and was committed and perpetrated willfully, wantonly, and purposefully.

127. As a proximate result of Defendants' deceit by concealment, Plaintiff suffered the injuries and damages described in this complaint.

## EIGHTH CAUSE OF ACTION

## DECEIT BY INTENTIONAL MISREPRESENTATION

## *CIV. CODE §§1709 – 1710*

**(Against All Defendants)**

128. Plaintiff re-alleges and incorporates by reference each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

129. Defendants negligently, knowingly, willfully, wrongfully, and intentionally made false misrepresentations, as previously set forth herein, to Plaintiff, the medical community, and other consumers, including without limitation, the following: (1) the Kugel Patch had been adequately tested prior to marketing; (2) the Kugel Patch did not have dangerous and/or serious adverse health effects and safety concerns; (3) the Kugel Patch was as safe, fit, and effective for its intended use; (4) an adequate quality assurance program was in place to monitor the Kugel Patch for adverse complications; and (5) multiple reports to the FDA underreporting the severity of device-related injuries.

130. The information distributed by Defendants to the public, the medical community, the FDA, and plaintiff was in the form of reports, press releases, advertising campaigns, print advertisements, commercial media containing material representations, which were false and misleading, and contained omissions and concealment of the truth about the dangers of the use of the Kugel Patch. Defendants made the foregoing misrepresentations knowing that they were false. These representations were made directly by Defendants, their authorized agents, including sales agents, and in publications and other written materials directed to the public, with the intention of inducing Plaintiffs' and other consumers' reliance, purchase, and use of the Product.

131. Defendants made the foregoing representations knowing that they were false. These representations were made directly by Defendants, their agents, and in publications and other written materials directed to the public, with the intention of inducing reliance and the purchase and use of the Kugel Patch.

132. Defendants' intent and purpose in making these misrepresentations was to deceive and defraud Plaintiff, other consumers, and the medical community; to gain the confidence of Plaintiff, the medical community, and other consumers; to falsely assure them of the quality of the Kugel Patch and its fitness for use; and to induce plaintiff, the medical community, and other consumers to request, recommend, prescribe, implant, purchase, and continue to use the Kugel Patch.

133. Defendants' misrepresentations were false when made and were made with the pretense of actual knowledge when such knowledge did not actually exist, and were made recklessly and egregiously without regard to the true facts.

134. In reliance on Defendants' misrepresentations, Plaintiff and his healthcare providers were induced to purchase and use the Kugel Patch. If Plaintiff had known of the true facts and the facts that Defendants had concealed the falsity of Defendants' representation, Plaintiff and his healthcare providers would not have purchased or used the Kugel Patch.

135. Plaintiff's and healthcare providers' reliance on Defendants' misrepresentations was justified and reasonable because such misrepresentations were made and conducted by individuals and entities that were in a position to know the true facts.

136. Defendants recklessly and/or intentionally falsely represented the dangerous and serious health and safety concerns inherent in the use of the Kugel Patch to the public at large, the medical community, and Plaintiff and his healthcare providers in particular, for the purpose of influencing the sales of a product known by Defendants to be dangerous and defective, and not as safe and effective as alternative hernia repair devices.

137. A foreseeable, direct, and proximate result of Defendants described acts and omissions, Plaintiff was caused to suffer the serious and dangerous side effects as are more specifically described in this Complaint.

138. Defendants knew when they made the aforementioned representations that the representations were false. Defendants intended that Plaintiff and his healthcare

providers would reasonably rely on the representations. Plaintiff and his healthcare providers did rely on these representations and purchased and used the Product, all to his detriment. In this context, Defendants' conduct constituted malice, oppression, and fraud. Plaintiff is therefore intended to recover punitive or exemplary damages.

139. As a direct, proximate, and legal result of Defendants' acts and omissions as described herein, Plaintiff has suffered serious physical injuries and has incurred substantial medical costs and expenses to treat and care for his injuries described herein.

140. As a further direct, proximate and legal result of Defendants acts and omissions, Plaintiff will continue to suffer serious and permanent physical and emotional injuries, and will continue to incur significant medical costs and expenses, expend large sums of money to pay for medical care and treatment of her physical injuries, and will continue to suffer economic loss, and physical and emotional injuries.

## NINTH CAUSE OF ACTION

## FRUAD AND DECEIT

**(Against All Defendants)**

141. Plaintiff re-alleges and incorporates by reference each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

142. Defendants from the time the Kugel Patch was first developed, tested, designed, manufactured, inspected, marketed, labeled, promoted, distributed, sold and up to the present, willfully deceived Plaintiff, the Healthcare community, and other consumers by concealing from them and misrepresenting to them, the true facts concerning the Kugel Patch, which Defendants, as the developers, designers, manufacturers, inspectors, labelers, promoters, distributors and sellers had a duty to disclose.

143. Defendants negligently, knowingly, willfully, wrongfully, and intentionally concealed certain material facts, as previously set forth herein, from Plaintiff, the

healthcare community, and other consumers, including without limitation, failing to disclose that the Kugel Patch was not safe, fit, and effective for use as a surgically implanted hernia repair device despite being aware at all relevant times of the dangerous and defective nature of the Kugel Patch, as described in this Complaint.

144. Defendants negligently, knowingly, willfully, wrongfully, and intentionally fraudulently represented, as previously set forth herein, to Plaintiff, the healthcare community, and other consumers, including without limitation, that the Kugel Patch was safe, fit, and effective for use as a surgically implanted hernia repair device despite being aware at all relevant times of the dangerous and defective nature of the Kugel Patch, as described in this Complaint.

145. At all times relevant to this action and herein mentioned, Defendants conducted a sales and marketing campaign to promote the sale of the Kugel Patch and willfully deceived Plaintiff, the healthcare community and other consumers as to the health risks and harmful consequences associated with the use of the Kugel Patch. Defendants knew and were aware of the foregoing, and that the Kugel Patch was not safe, fit, and effective for its intended use, that the use of it is hazardous to human health, and that said Product has a serious propensity to cause serious injuries to users, including but not limited to the injuries suffered by Plaintiff as described in this Complaint.

146. At all relevant times the Kugel Patch was not safe, fit, and effective for human use as a surgically implanted hernia repair device, as use of the Kugel Patch is hazardous to health, and said product has a serious propensity to cause users to suffer serious injuries, including without limitation the injuries Plaintiff suffered.

147. Defendants intentionally concealed and misrepresented the true facts concerning the Kugel Patch, although Defendants were bound to disclose the true facts. Defendants concealed and misrepresented the foregoing material facts knowing that they were false. These representations were made directly by Defendants, their authorized agents, including sales agents, and in publications and other written materials directed to

the public and the medical community, with the intention of inducing Plaintiffs' and other consumers' reliance, purchase, and use of the Product.

148. In reliance upon false and fraudulent misrepresentations and omissions made by Defendants Plaintiff and his healthcare providers were induced to, and did use the Kugel Patch, thereby causing Plaintiff to sustain severe and permanent personal injuries and damages. Defendants knew and had reason to know that Plaintiff, the healthcare community, and other consumers did not have the ability to determine the true facts intentionally concealed and misrepresented by them in prescribing and implanting the Kugel Patch, and would not have, respectively, implanted same, if the true facts regarding the Patch had not been concealed and misrepresented by them.

149. Defendants had sole access to material facts concerning the defective nature of the Kugel Patch and its propensity to cause serious and dangerous side effects in the form of dangerous injuries and damages to persons who are implanted with the Patch.

150. At the time Defendants failed to disclose and misrepresented the foregoing facts, and at the time Plaintiff used the Kugel Patch, neither Plaintiff nor his healthcare providers were aware of the Defendants' fraudulent misrepresentations and omissions.

151. Plaintiff, the healthcare community, and other consumers reasonably relied upon Defendants' misrepresentations, where knowledge of the concealed and misrepresented facts were critical to understanding the true dangers inherent in the use of the Kugel Patch.

152. Defendants knew when they made the aforementioned representations that the representations were false. Defendants intended that Plaintiff and his healthcare providers would reasonably rely on the representations. Plaintiff did rely on these representations and purchased and used the Kugel Patch, all to his detriment. In this context, Defendants' conduct constituted malice, oppression, and fraud.

153. Plaintiff was caused to suffer the injuries and damages described in this complaint as a proximate result of Defendants engaging in deceitful and fraudulent conduct.

## TENTH CAUSE OF ACTION

## NEGLIGENT MISREPRESENTATION

**(Against All Defendants)**

154. Plaintiff re-alleges and incorporates by reference each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

155. Defendants made false misrepresentations, as previously set forth herein, to Plaintiff, the healthcare community, and other consumers, including without limitation, the misrepresentation that the Kugel Patch was safe, fit, and effective for use in its intended and reasonably foreseeable manner.

156. Defendants made the foregoing representations without reasonable grounds for believing them to be true. These representations were made directly by Defendants, their authorized agents, including sales agents, and in publications and other written materials directed to the public, with the intention of inducing Plaintiff, the healthcare community, and other consumers to rely on these representations and purchase and use the Kugel Patch.

157. The foregoing representations by Defendants were in fact false. The Kugel Patch was not safe, fit, and effective for human use in its intended and reasonably foreseeable manner, the use of the Kugel® Patch is hazardous to the user's health, and said Patch has a serious propensity to cause users to suffer serious injuries, including without limitation, the injuries Plaintiff suffered.

158. In reliance upon the false and fraudulent misrepresentations and omissions made by Defendants Plaintiff, the healthcare community, and other consumers were induced to, and did use the Kugel Patch, thereby causing those persons implanted, including Plaintiff, to sustain severe and permanent personal injuries and damages. Defendants knew and had reason to know that Plaintiff, the healthcare community, and other consumers did not have the ability to determine the true facts intentionally and/or negligently concealed and misrepresented by them in prescribing and implanting the

Kugel Patch, and would not have, respectively, prescribed and implanted same, if the true facts regarding the Patch had not been concealed and misrepresented by Defendants.

159. Defendants had sole access to material facts concerning the defective nature of the product and its propensity to cause serious and dangerous side effects in the form of dangerous injuries and damages to persons who are implanted with the Patch.

160. At the time failed to disclose and misrepresented the foregoing facts, and at the time Plaintiff used the Kugel Patch, Plaintiff and his physicians were unaware of said Defendants' fraudulent misrepresentations and omissions.

161. Plaintiff, the healthcare community, and other consumers reasonably relied upon Defendants' the misrepresentations made by Defendants where knowledge of the concealed and misrepresented facts were critical to understanding the true dangers inherent in the use of the Kugel® Patch.

162. Defendants knew when they made the aforementioned representations that the representations were false. Defendants intended that Plaintiff, the healthcare community, and other consumers would reasonably rely on the representations. Plaintiff, the healthcare community, and other consumers did rely on these representations and purchased and used the Kugel Patch, all to detriment of those whom the product was implanted, including Plaintiff. In this context, Defendants' conduct constituted malice, oppression, and fraud. Plaintiff is therefore intended to recover punitive or exemplary damages.

163. Plaintiff was caused to suffer the injuries and damages described in this complaint as a proximate result of the negligent misrepresentations made by Defendants.

///

///

///

## ELEVENTH CAUSE OF ACTION

## VIOLATION OF *BUSINESS AND PROFESSIONS CODE* §§ 17200, *ET SEQ.*

**(Against All Defendants)**

164. Plaintiff re-alleges and incorporates by reference each and every allegation contained in foregoing paragraphs as though fully set forth herein.

165. Plaintiff brings this cause of action pursuant to The Unfair Practices Act *Business and Professions Code* §§ 17200 *et seq.* which provides that unfair and deceptive business practices shall mean and include any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising.

166. The acts and practices described above, were and are likely to and did mislead the general public, including plaintiff, and therefore constitute unfair business practices within the meaning of *Business and Professions Code* §§ 17200, *et seq*. The acts of untrue and misleading advertising set forth in preceding paragraphs are incorporated by reference and are, by definition, in violation of *Business and Professions Code* §§ 17200 *et seq*. This conduct includes but is not limited to:

(a) Representing to Plaintiff, his physicians, and the general public that the Kugel Patch was safe, fit, and effective for its intended use, knowing that said representations were false, and concealing from Plaintiff, his physicians, and the general public that said product had a serious propensity to and did cause physical harm and injuries to users.

(b) Engaging in advertising programs designed to create the image, impression, and belief by consumers and physicians that the Kugel Patch was safe for human use, had fewer side effects and/or adverse reactions than other surgically implanted hernia repair devices, constituted a safe and effective form of repairing hernias, even though Defendants knew these representations to be false, and even

though Defendants had no reasonable grounds to believe them to be true.

(c) Purposefully and intentionally downplaying and understating the health hazards and risks associated with the Kugel® Patch which were known to Defendants.

(d) Issuing promotional literature deceiving potential users of the Kugel® Patch by relaying positive information, including testimonials from satisfied users to suggest widespread acceptability, while downplaying the known adverse and serious health effects and concealing material relevant information regarding the safety and efficacy of said product.

(e) Encouraging the use of the Kugel® Patch while knowing that the said product was especially hazardous, had not been systemically tested by appropriate clinical trials, had not been adequately tracked post-marketing, and causes serious adverse health effects.

167. These practices constitute unlawful, unfair, and fraudulent business acts or practices, within the meaning of *Business and Professions Code* §§17200 *et seq*., as well as unfair, deceptive, untrue and misleading advertising as prohibited by *Business and Professions Code* § 17500.

168. Defendants acted willfully, knowingly, intentionally, unconscionably and with reckless indifference for the health, safety, and well being of the consumers of the product when committing the foregoing false and misleading advertising. As a foreseeable, direct, and proximate result of Defendants' actions towards consumers of the Kugel Patch, Plaintiff purchased and was implanted with an unreasonably dangerous and unsafe product and incurred monetary damages and expenses.

169. The unlawful, unfair, and fraudulent business practices of Defendants described above present a continuing threat to members of the public in that Defendants continue to engage in the conduct described herein.

170. As a result of their conduct described in this Complaint and specifically in this cause of action, Defendants have been and will be unjustly enriched. Specifically, said Defendants have been unjustly enriched by receipt of hundreds of millions of dollars in ill-gotten gains from the sale of said Product, sold as a result of Defendants' acts and omissions, as unlawful, unfair, deceptive, and fraudulent described herein.

171. Because of the fraudulent misrepresentations by Defendants, as detailed above, and the inherently unfair practice of committing a fraud against the public by intentionally misrepresenting and concealing material information, the acts of said Defendants described herein constitute unfair or fraudulent business practices.

172. Plaintiff, pursuant to *Business and Professions Code* § 17203, seeks an order of this court compelling Defendants to provide restitution, and to disgorge the monies collected and profits realized by said Defendants, and each of them, as a result of their unfair business practices, and injunctive relief calling for same, to forever cease and desist such unfair business practices in the future.

## TWELFTH CAUSE OF ACTION
## VIOLATION OF *BUSINESS AND PROFESSIONS CODE* §§ 17500, *ET SEQ.*
**(Against All Defendants)**

173. Plaintiff re-alleges and incorporates by reference each and every allegation contained in foregoing paragraphs as though fully set forth herein.

174. Plaintiff brings this cause of action pursuant to *Business and Professions Code* § 17500 which provides that it is unlawful for any person, firm, corporation or association to dispose of property or perform services, or to induce the public to enter into any obligation relating thereto, through the use of untrue or misleading statements.

175. At all times herein mentioned Defendants have committed acts of disseminating untrue and misleading statements as defined by *Business and Professions Code* § 17500 by engaging in the following acts and practices with intent to induce members of the public to purchase and use Defendants' Kugel Patch:

a. Representing to Plaintiff, his physicians, and the general public that said product was safe, fit, and effective for its intended use, knowing that said representations were false, and concealing from Plaintiff, his physicians, and the general public that said product had a serious propensity to and did cause injuries to users.

b. Engaging in advertising programs designed to create the image, impression, and belief by consumers, including Plaintiff, and his physicians that the use of the Kugel® Patch was safe for human use, had fewer side effects and/or adverse reactions than other surgically implanted hernia repair devices, constituted a effective and safe hernia repair method and would not interfere with daily life, even though Defendants knew these statements and representations to be false, and even though Defendants had no reasonable grounds to believe them to be true.

c. Purposefully and intentionally downplaying and understating the health hazards and risks associated with the Kugel® Patch, which were known to Defendants.

d. Issuing promotional literature deceiving potential users of the Kugel® Patch by relaying positive information, including testimonials from satisfied users to suggest widespread acceptability, while downplaying the known adverse and serious health effects and concealing material relevant information regarding the safety and efficacy of said product.

e. Encouraging the use of the Kugel® Patch while knowing that the said product was especially hazardous, had not been systemically tested by appropriate clinical trials, had not been adequately tracked post-marketing, and causes serious adverse health effects.

176. The foregoing practices constitute false and misleading advertising within the meaning of *Business and Professions Code* § 17500.

177. Defendants acted willfully, knowingly, intentionally, unconscionably and with reckless indifference for the health, safety, and well being of the consumers of the product when committing the foregoing false and misleading advertising. As a foreseeable, direct, and proximate result of Defendants' actions towards consumers of the Kugel® Patch, Plaintiff purchased and was implanted with an unreasonably dangerous and unsafe product and incurred monetary damages and expenses.

178. The acts of untrue and misleading statements by Defendants as described in this Complaint and specifically in this cause of action present a continuing threat to members of the public in that the acts alleged herein are continuous and ongoing, and the public will continue to suffer the harm proximately caused by said Defendants' conduct and Product.

179. As a result of their false and misleading statements described above, Defendants have been and will be unjustly enriched. Specifically, Defendants have been unjustly enriched by hundreds of millions of dollars in ill-gotten gains from the sale and implantation of the Kugel Patch, implanted and sold as a result of the false or misleading statements of Defendants described herein. Pursuant to *Business and Professions Code* §17535, Plaintiff seeks an order of this court compelling Defendants to provide restitution, and to disgorge the monies collected and profits realized by Defendants, and each of them, as a result of their unfair business practices, and injunctive relief calling for Defendants, and each of them, to forever cease and desist such unfair business practices in the future.

180. Plaintiff seeks the imposition of a constructive trust over, and restitution and disgorgement of, the monies collected and profits realized by Defendants DAVOL, BARD DEVICES, C.R. BARD, and DOES 1 through 150, inclusive, and each of them, to cease such false and misleading advertising in the future.

**THIRTEENTH CAUSE OF ACTION**

**VIOLATION OF *CIVIL CODE* §§ 1750, *ET SEQ.***

**(Against All Defendants)**

181. Plaintiff re-alleges and incorporates by reference each and every allegation contained in foregoing paragraphs as though fully set forth herein.

182. Plaintiff is informed and believes and thereon alleges that Defendants, by the acts and misconduct alleged herein, violated the Consumers Legal Remedies Act *Civil Code* §§ 1750 *et. seq*. ("CLRA").

183. Plaintiff hereby seeks injunctive relief as appropriate against Defendants for their violations of *Civil Code* §§ 1750, *et seq*. The CLRA applies to Defendants' actions and conduct described herein because it extends to transactions which are intended to result, or which have resulted, in the sale of goods to consumers.

184. Plaintiff is a "consumer" within the meaning of *Civil Code* § 1761(d).

185. Defendants have violated, and continue to violate the CLRA which prohibits the following unfair methods of competition and unfair or deceptive acts or practices when undertaking in connection with a transaction that is intended to result, or that does result in the sale of goods to a consumer.

a. "Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he or she does not have." *Civil Code* § 1770(a)(5).

b. "Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another.' *Civil Code* § 1770(a)(7).

186. At all times herein mentioned Defendants have committed acts of disseminating untrue and misleading statements as defined by *Civil Code* § 1770 by

engaging in the following acts and practices with intent to induce members of the public, including Plaintiff, to purchase and use the Kugel Patch:

a. Representing to Plaintiff, the healthcare community, and other American consumers that the Kugel Patch was safe, fit, and effective for human use, and that said product was just as safe, fit, and effective as alternative surgically implanted hernia repair devices, knowing that said representations were false, and concealing from Plaintiff, the healthcare community, and other American consumers that the Patch had an increased propensity to cause physical harm and injuries to users;

b. Engaging in advertising programs designed to create the image, impression and belief by consumers and physicians that the use of the Kugel® Patch was safe, had fewer side effects and/or adverse reactions than other surgically implanted hernia repair devices, and would not interfere with daily life, even though Defendants knew these representations to be false at the time they made them, even though Defendants had no reasonable ground to believe them to be true;

c. Purposely downplaying and understating the health hazards and risks associated with the Kugel Patch; and

d. Issuing promotional literature deceiving potential users of the Kugel Patch by relaying positive information and manipulating statistics to suggest that the risks of said product were the same as those known to be associated with other surgically implanted hernia repair devices, while downplaying the known increase of adverse and serious health effects and concealing material relevant information regarding the safety of the Patch.

187. The foregoing practices constitute false and misleading advertising and representations within the meaning of *Civil Code* § 1770. The acts of untrue and misleading statements by Defendants described herein present a continuing threat to members of the public and individual consumers, including Plaintiff, in that the acts alleged herein are continuous and ongoing, and the public and individual consumers will continue to suffer harm as alleged herein.

188. Unless Defendants are enjoined from continuing to engage in these violations of the CLRA, Plaintiff will continue to be harmed by Defendants' wrongful actions and conduct.

189. Unless Defendants are enjoined from continuing to engage in these violations of the CLRA, Plaintiff will continue to be harmed by Defendants' wrongful actions and conduct.

190. Pursuant to *Civil Code* § 1780, Plaintiff seek an order of this court for injunctive relief calling for Defendants to cease such deceptive business practices in the future.

## PUNITIVE DAMAGES ALLEGATIONS

## *CIVIL CODE* § 3294

**(Against Defendants DAVOL, BARD DEVICES, C.R. BARD, and DOES 1 through 150, inclusive)**

191. Plaintiff realleges each and every allegation in this Complaint and incorporates each allegation into this Count, as if set forth at length, in its entirety.

192. Plaintiffs are entitled to an award of punitive and exemplary damages based upon Defendants' intentional, willful, knowing, fraudulent, malicious acts, omissions, and conduct, and their complete and total reckless disregard for the public safety and welfare. Defendants intentionally and fraudulently misrepresented facts and information to both the healthcare community and the general public, including Plaintiff, by making intentionally false and fraudulent misrepresentations about the safety and efficacy of the

Kugel Patch. Defendants intentionally concealed the true facts and information regarding the serious risks of harm associated with the ingestion of said product, and intentionally downplayed the type, nature, and extent of the adverse side effects of being implanted with the Kugel Patch, despite Defendants' knowledge and awareness of the serious and permanent side effects and risks associated with use of same.

193. Defendants had knowledge of, and were in possession of evidence demonstrating that, the Kugel Patch caused serious physical side effects. Defendants continued to market said product by providing false and misleading information with regard to the product's safety and efficacy to the regulatory agencies, the medical community, and consumers of Kugel Patch, notwithstanding Defendants' knowledge of the true serious side effects of the Kugel Patch,

194. Defendants failed to provide accurate information and warnings to the healthcare community that would have dissuaded physicians from surgically implanting the Kugel Patch and consumers from agreeing to being implanted with the Kugel Patch, thus depriving physicians and consumers from weighing the true risks against the benefits of prescribing and implanting the Kugel Patch.

195. As a direct, proximate, and legal result of Defendants' acts and omissions a described herein, and Plaintiff's implantation with Defendants' defective product, Plaintiff suffered, and will continue to suffer, the injuries and damages described in this complaint.

## PRAYER FOR DAMAGES

**WHEREFORE**, Plaintiff, XAVIER CASTRO prays for relief on the entire Complaint, as follows:

1. Judgment be entered against all Defendants on all causes of action of this Complaint;

2. Plaintiff be awarded his full, fair and complete recovery for all claims and

causes of action alleged herein;

3. Plaintiff be awarded all appropriate costs, attorney's fees, expenses, and pre-judgment and post-judgment interest, as authorized by law on the judgments which are entered in Plaintiff's favor; and,

4. Such other relief the court deems as just and appropriate.

**WHEREFORE**, Plaintiff, XAVIER CASTRO, prays for judgment against Defendants, and each of them, as follows:

**AS TO THE FIRST CAUSE OF ACTION FOR NEGLIGENCE**

1. General damage according to proof at the time of trial;

2. Medical and other special damages, past, present and future, according to proof at the time of trial;

3. Loss of earnings and loss earnings capacity, according to proof at the time of trial;

4. For medical monitoring according to proof;

5. For pre-judgment and post-judgment interest as followed by the laws of the state of California;

6. Costs of suit incurred herein; and

7. For such other and further relief as the court may deem just and proper.

**AS TO THE SECOND CAUSE OF ACTION FOR STRICT PRODUCTS LIABILITY – FAILURE TO WARN**

1. General damage according to proof at the time of trial;

2. Medical and other special damages, past, present and future, according to proof at the time of trial;

3. Loss of earnings and loss earnings capacity, according to proof at the time of trial;

4. For medical monitoring according to proof;

5. For pre-judgment and post-judgment interest as followed by the laws of the state of California;

6. Punitive Damages;

7. Costs of suit incurred herein; and

8. For such other and further relief as the court may deem just and proper.

**AS TO THE THIRD CAUSE OF ACTION FOR STRICT PRODUCTS LIABILITY – DESIGN DEFECT**

1. General damage according to proof at the time of trial;

2. Medical and other special damages, past, present and future, according to proof at the time of trial;

3. Loss of earnings and loss earnings capacity, according to proof at the time of trial;

4. For medical monitoring according to proof;

5. For pre-judgment and post-judgment interest as followed by the laws of the state of California;

6. Punitive Damages;

7. Costs of suit incurred herein; and

8. For such other and further relief as the court may deem just and proper.

**AS TO THE THIRD CAUSE OF ACTION FOR STRICT PRODUCTS LIABILITY –MANUFACTURING DEFECT**

1. General damage according to proof at the time of trial;

2. Medical and other special damages, past, present and future, according to proof at the time of trial;

3. Loss of earnings and loss earnings capacity, according to proof at the time of trial;

4. For medical monitoring according to proof;

5. For pre-judgment and post-judgment interest as followed by the laws of the state of California;

6. Punitive Damages;

7. Costs of suit incurred herein; and

8. For such other and further relief as the court may deem just and proper.

**AS TO THE FIFTH CAUSE OF ACTION FOR BREACH OF EXPRESS WARRANTY**

1. General damage according to proof at the time of trial;

2. Medical and other special damages, past, present and future, according to proof at the time of trial;

3. Loss of earnings and loss earnings capacity, according to proof at the time of trial;

4. For medical monitoring according to proof;

5. For pre-judgment and post-judgment interest as followed by the laws of the state of California;

6. Costs of suit incurred herein; and

7. For such other and further relief as the court may deem just and proper.

**AS TO THE SIXTH CAUSE OF ACTION FOR BREACH OF IMPLIED WARRANTY**

1. General damage according to proof at the time of trial;

2. Medical and other special damages, past, present and future, according to proof at the time of trial;

3. Loss of earnings and loss earnings capacity, according to proof at the time of trial;

4. For medical monitoring according to proof;

5. For pre-judgment and post-judgment interest as followed by the laws of the state of California;

6. Costs of suit incurred herein; and

7. For such other and further relief as the court may deem just and proper.

**AS TO THE SEVENTH CAUSE OF ACTION FOR DECEIT BY CONCEALMENT**

1. General damage according to proof at the time of trial;

2. Medical and other special damages, past, present and future, according to proof at the time of trial;

3. Loss of earnings and loss earnings capacity, according to proof at the time of trial;

4. For medical monitoring according to proof;

5. For pre-judgment and post-judgment interest as followed by the laws of the state of California;

6. Punitive Damages;

7. Costs of suit incurred herein; and

8. For such other and further relief as the court may deem just and proper.

**AS TO THE EIGHTH CAUSE OF ACTION FOR DECEIT BY INTENTIONAL MISREPRESENTATION**

1. General damage according to proof at the time of trial;

2. Medical and other special damages, past, present and future, according to proof at the time of trial;

3. Loss of earnings and loss earnings capacity, according to proof at the time of trial;

4. For medical monitoring according to proof;

5. For pre-judgment and post-judgment interest as followed by the laws of the state of California;

6. Punitive Damages;

7. Costs of suit incurred herein; and

8. For such other and further relief as the court may deem just and proper.

**AS TO THE NINTH CAUSE OF ACTION FOR FRAUD AND DECEIT**

1. General damage according to proof at the time of trial;

2. Medical and other special damages, past, present and future, according to proof at the time of trial;

3. Loss of earnings and loss earnings capacity, according to proof at the time of trial;

4. For medical monitoring according to proof;

5. For pre-judgment and post-judgment interest as followed by the laws of the state of California;

6. Punitive Damages;

7. Costs of suit incurred herein; and

8. For such other and further relief as the court may deem just and proper.

**AS TO THE TENTH CAUSE OF ACTION FOR NEGLIGENT MISREPRESENTATION**

1. General damage according to proof at the time of trial;

2. For medical and other special damages, past, present and future, according to proof at the time of trial;

3. Loss of earnings and loss earnings capacity, according to proof at the time of trial;

4. For medical monitoring according to proof;

5. For pre-judgment and post-judgment interest as followed by the laws of the state of California;

6. Costs of suit incurred herein; and

7. For such other and further relief as the court may deem just and proper.

**AS TO THE ELEVENTH CAUSE OF ACTION FOR VIOLATION OF *BUSINESS AND PROFESSIONS CODE* §§ 17200 *ET SEQ.***

1. For injunctive relief, forever enjoining Defendants from the acts of unfair competition and untrue and misleading business practices, and ordering Defendants to pay restitution to Plaintiff all funds acquired by means of any act or practice declared by this court to be in violation of *Business and Professions Code* Section 17200, et seq., unlawful or fraudulent, or to constitute unfair competition or untrue or misleading advertising;

2. For disgorgement of Defendant's profits;

3. For exemplary and punitive damages in an amount to be proven at trial;

4. For such other and further relied as the Court deems just and proper;

5. For attorneys, according to proof.

**AS TO THE TWELFTH CAUSE OF ACTION FOR VIOLATION OF *BUSINESS AND PROFESSIONS CODE* §§ 17500 *ET SEQ.***

1. For injunctive relief, forever enjoining Defendants from the acts of unfair competition and untrue and misleading business practices, and ordering Defendants to pay restitution to Plaintiff all funds acquired by means of any act or practice declared by this court to be in violation of *Business and Professions Code* Section 17500, et seq., unlawful or fraudulent, or to constitute unfair competition or untrue or misleading advertising;

2. For disgorgement of Defendant's profits;

3. For exemplary and punitive damages in an amount to be proven at trial;

4. For such other and further relied as the Court deems just and proper;

5. For attorneys, according to proof.

**AS TO THE THIRTEENTH CAUSE OF ACTION FOR VIOLATION OF *CIVIL CODE* §§ 1750 *ET SEQ.***

1. For injunctive relief, forever enjoining Defendants from the acts of unfair competition and untrue and misleading business practices, and ordering Defendants to pay restitution to Plaintiff all funds acquired by means of any act or practice declared by this court to be in violation of *Civil Code* Section 1750, et seq., unlawful or fraudulent, or to constitute unfair competition or untrue or misleading advertising;

2. For disgorgement of Defendant's profits;

3. For exemplary and punitive damages in an amount to be proven at trial;

4. For such other and further relied as the Court deems just and proper;

5. For attorneys, according to proof.

**DEMAND FOR JURY TRIAL**

Plaintiff XAVIER CASTRO demands a trial by jury on all triable issues in this civil action.

LOPEZ McHUGH LLP

Dated: March 24, 2008

By: ______________________________

RAMON ROSSI LOPEZ
CHRISTINA ANNE FOUNTAIN
TROY A. BRENES
Attorneys for Plaintiff
XAVIER CASTRO

Ramon Rossi Lopez
rlopez@lopemchugh.com
LOPEZ McHUGH LLP
100 Bayview Circle, North Tower, Ste. 5600
Newport Beach, CA 92660
(949) 737-1501

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| XAVIER CASTRO, an individual, PLAINTIFF(S) | CASE NUMBER CV08-01966 VBF (OPx) |
| v. | |
| DAVOL INC., a Corporation, BARD DEVICES, INC., a Corporation; C.R. BARD, Inc., a Corporation, and DOES 1 through 10, inclusive, DEFENDANT(S). | **SUMMONS** |

TO: THE ABOVE-NAMED DEFENDANT(S):

YOU ARE HEREBY SUMMONED and required to file with this court and serve upon plaintiff's attorney RAMON ROSSI LOPEZ, whose address is:

100 Bayview Circle, North Tower, Ste. 5600
Newport Beach, CA 92660

an answer to the ☒ complaint ☐ ____________ amended complaint ☐ counterclaim ☐ cross-claim which is herewith served upon you within 20 days after service of this Summons upon you, exclusive of the day of service. If you fail to do so, judgement by default will be taken against you for the relief demanded in the complaint.

Clerk, U.S. District Court

LA'REE HORN

Dated: MAR 25 2008

By: ______________________
Deputy Clerk

*(Seal of the Court)*

SEAL OF THE U.S. DISTRICT COURT CENTRAL DIST. OF CALIFORNIA

1192



BY FAX

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Valerie Baker Fairbank and the assigned discovery Magistrate Judge is Oswald Parada.

The case number on all documents filed with the Court should read as follows:

**CV08- 1966 VBF (OPx)**

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

---

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

[X] **Western Division**
**312 N. Spring St., Rm. G-8**
**Los Angeles, CA 90012**

[ ] **Southern Division**
**411 West Fourth St., Rm. 1-053**
**Santa Ana, CA 92701-4516**

[ ] **Eastern Division**
**3470 Twelfth St., Rm. 134**
**Riverside, CA 92501**

Failure to file at the proper location will result in your documents being returned to you.

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
**CIVIL COVER SHEET**

**I (a) PLAINTIFFS** (Check box if you are representing yourself ☐)
XAVIER CASTRO

**DEFENDANTS**
DAVOL, INC., a Delaware Corporation; BARD DEVICES, INC., a Delaware Corporation; C.R. BARD, INC., a New Jersey Corporation and DOES 1 through 10, inclusive,

**(b)** County of Residence of First Listed Plaintiff (Except in U.S. Plaintiff Cases):

County of Residence of First Listed Defendant (In U.S. Plaintiff Cases Only):

**(c)** Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)
Ramon Rossi Lopez/Christina Anne Fountain
Troy A. Brenes
LOPEZ McHUGH LLP
100 Bayview Cir., Ste. 5600, North Tower, Newport Beach, CA 92660

Attorneys (If Known)

**CV08-01966 VBF (OPx)**

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff
☐ 3 Federal Question (U.S. Government Not a Party)
☐ 2 U.S. Government Defendant
☑ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☑ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☑ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☑ 1 Original Proceeding ☐ 2 Removed from State Court ☐ 3 Remanded from Appellate Court ☐ 4 Reinstated or Reopened ☐ 5 Transferred from another district (specify): ☐ 6 Multi-District Litigation ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☑ Yes ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes ☑ No ☐ **MONEY DEMANDED IN COMPLAINT: $**____________

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
28 U.S.C. 1332 - Product Liability action against foreign defendants.

**VII. NATURE OF SUIT (Place an X in one box only.)**

**OTHER STATUTES**
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce/ICC Rates/etc.
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Sat TV
- ☐ 810 Selective Service
- ☐ 850 Securities/Commodities /Exchange
- ☐ 875 Customer Challenge 12 USC 3410
- ☐ 890 Other Statutory Actions
- ☐ 891 Agricultural Act
- ☐ 892 Economic Stabilization Act
- ☐ 893 Environmental Matters
- ☐ 894 Energy Allocation Act
- ☐ 895 Freedom of Info. Act
- ☐ 900 Appeal of Fee Determination Under Equal Access to Justice
- ☐ 950 Constitutionality of State Statutes

**CONTRACT**
- ☐ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☐ 190 Other Contract
- ☐ 195 Contract Product Liability
- ☐ 196 Franchise

**REAL PROPERTY**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**TORTS PERSONAL INJURY**
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Fed. Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury
- ☐ 362 Personal Injury-Med Malpractice
- ☑ 365 Personal Injury-Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

**TORTS PERSONAL PROPERTY**
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**BANKRUPTCY**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**CIVIL RIGHTS**
- ☐ 441 Voting
- ☐ 442 Employment
- ☐ 443 Housing/Accommodations
- ☐ 444 Welfare
- ☐ 445 American with Disabilities - Employment
- ☐ 446 American with Disabilities - Other
- ☐ 440 Other Civil Rights

**PRISONER PETITIONS**
- ☐ 510 Motions to Vacate Sentence Habeas Corpus
- ☐ 530 General
- ☐ 535 Death Penalty
- ☐ 540 Mandamus/ Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition

**FORFEITURE / PENALTY**
- ☐ 610 Agriculture
- ☐ 620 Other Food & Drug
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 630 Liquor Laws
- ☐ 640 R.R. & Truck
- ☐ 650 Airline Regs
- ☐ 660 Occupational Safety /Health
- ☐ 690 Other

**LABOR**
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Mgmt. Relations
- ☐ 730 Labor/Mgmt. Reporting & Disclosure Act
- ☐ 740 Railway Labor Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Empl. Ret. Inc. Security Act

**PROPERTY RIGHTS**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

**SOCIAL SECURITY**
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS-Third Party 26 USC 7609

**VIII(a). IDENTICAL CASES:** Has this action been previously filed and dismissed, remanded or closed? ☑ No ☐ Yes

If yes, list case number(s):

**FOR OFFICE USE ONLY:** Case Number: **CV08-01966 VBF (OPx)**

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
**CIVIL COVER SHEET**

**AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.**

**VIII(b). RELATED CASES:** Have any cases been previously filed that are related to the present case? ☑ No ☐ Yes

If yes, list case number(s): ____________________

**Civil cases are deemed related if a previously filed case and the present case:**

(Check all boxes that apply) ☑ A. Arise from the same or closely related transactions, happenings, or events; or
☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or
☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or
☐ D. Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

**IX. VENUE:** List the California County, or State if other than California, in which **EACH** named plaintiff resides (Use an additional sheet if necessary)
☐ Check here if the U.S. government, its agencies or employees is a named plaintiff.
Riverside County

List the California County, or State if other than California, in which **EACH** named defendant resides. (Use an additional sheet if necessary).
☐ Check here if the U.S. government, its agencies or employees is a named defendant.
Davol Inc., A Delaware Corporation; RI
Bard Devices, Inc., a Delaware Corporation; NJ
C.R. Bard, Inc., a New Jersey Corporation; NJ

**List the California County,** or State if other than California, in which **EACH** claim arose. (Use an additional sheet if necessary)
**Note:** In land condemnation cases, use the location of the tract of land involved.
Riverside County

**X. SIGNATURE OF ATTORNEY (OR PRO PER):** [signature] Date 3/24/08

**Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |